**In re 59 SKIDS OF TIN PLATE et al.**

Civil Action No. 11727.

United States District Court
D. New Jersey.

Dec. 6, 1948.

Morton Stavis, of Newark, N. J., for petitioner.

Alfred E. Modarelli, U. S. Atty., by Roger M. Yancey, Asst. U. S. Atty., both of Newark, N. J., for respondent.

SMITH, District Judge.

### Facts.

Henry Robinson Company, Inc., a corporation of the State of New York, hereinafter identified as the Petitioner, purchased from one Seymour Vosko, of the Dominion of Canada, a quantity of "coke tin plate wasters," described as "waste," as distinguished from "scrap." The purchase order was filled by the St. Lawrence Manufacturing Co., Inc., of the Dominion of Canada, hereinafter identified as the "Shipper." The Shipper filed with the Export Permit Branch of the Department of Trade and Commerce of the Dominion of Canada, an application for a permit to export the said commodity.

The application was false in the following respects: First, the name and address of the consignee was therein stated as "Henri Robinson, Rome, Italy," when in truth and in fact the name and address of the consignee was Henry Robinson Co., Inc., New York, New York; and second, the ultimate destination was therein stated as "Italy," when in truth and in fact the ultimate destination was Yugoslavia. An export permit issued on the application. It is reasonable to infer that the false application was wilfully made by the Shipper with intent to evade the laws of the Dominion of Canada.

The commodity was shipped in bond to the Petitioner, 62 William Street, New York. The shipment entered the United States at Rouses Point, New York, where F. W. Myers & Co., Inc., acting on behalf of the Canadian National Railway, filed with the United States Customs Service "Transportation Entry and Manifest of Goods Subject to Customs Inspection and Permit," Entry No. A733 and Entry No. A831. These manifests were likewise false in that the final foreign destination was therein stated as "Italy."

The Petitioner was advised of the arrival of the commodity at New York, New York, and thereafter Brauner & Co., upon the instructions of the Petitioner, executed and filed two "Shippers' Export Declarations for In-Transit Goods," 14699 and 14700, in each of which the name and address of the ultimate consignee were truthfully stated as follows: Tehnopromet, Belgrade, Yugoslavia.

The Petitioner attempted to export the commodity under the general license, "GIT," established by Section 372.9(a) of the rules and regulations of the Office of International Trade, which authorized, "subject to other provisions" therein contained, "the exportation from the United States of shipments of commodities *Moving in Transit Through the United States* for which no formal or informal consumption entry has been made by the United States

Customhouse, which originate in and are destined to any foreign country."

Pursuant to the provisions of Section 401 of Title 22, U.S.C., 22 U.S.C.A. § 401, quoted in the annexed appendix, the shipment was seized, and thereafter, pursuant to the provisions of Section 402 of the said Title, 22 U.S.C.A. § 402, application was made to this court for a warrant of detention. The warrant of detention issued and the present proceeding followed.

### Proceedings.

The matter is before the court at this time on a petition for restoration filed pursuant to the provisions of Section 403 of Title 22 U.S.C., 22 U.S.C.A. § 403. This petition is resisted on the ground that the commodity is subject to seizure and forfeiture under the express provisions of Section 401 of the said title, 22 U.S.C.A. § 401.

### Discussion.

It is the contention of the Government that the attempted exportation of the commodity was in violation of the rules and regulations promulgated by the Office of the International Trade, and particularly Section 371.2(b) (3) (i), Page 4099 of the Federal Register of July 17, 1948. This contention seems to rest entirely on the argument that the "Transportation Entry and Manifest of Goods Subject to Customs Inspection and Permit," hereinabove referred to, was an "export control document" within the meaning of Section 371.1 (o). We cannot agree with either the contention or the argument advanced in support of it.

Section 371.2(b), supra, reads as follows:

"(3) Without limitation of the foregoing or of any other provisions of the law or Parts 370 to 399, inclusive, of this chapter, no such person shall:

(i) Falsely state the country of ultimate destination intended, *or divert commodities in violation of the terms, provisions and conditions of any export control document* to any country other than that of the destination named in the document, or attempt or conspire to do the same."

Section 371.1, supra, defines an "export control document" as follows:

"(o) 'Export control document' means a validated export license, an authenticated shipper's export declaration based upon such a license or used to effect a shipment under general license, a dock receipt or bill of lading issued by any carrier upon the basis of such validated license or export declaration, or any other document provided in Parts 370 to 399, inclusive, of this chapter, to be evidence of the existence of an export license for the purpose of loading onto an exporting carrier or otherwise facilitating or effecting an exportation from the United States of any commodity or commodities requiring an export license; * * *."

It seems reasonably clear upon a mere reading of the quoted regulations that the attempted exportation of the commodity was a violation only if the "Transportation Entry and Manifest of Goods Subject to Customs Inspection and Permit" was an "export control document" within the quoted definition. The definition is clearly directed only to the documents required to effect an export; it is not all-inclusive. We have carefully examined the regulations and we find no specific reference therein to the document here in question; other documents are classified and defined with certainty.

The argument of the Government cannot be adopted as sound without inferentially enlarging the scope of the quoted definition so as to make it all-inclusive. Even the suggested inference is not derived from the language of the regulations but from the routine office practice of the Customs Service. The alleged violation of the law cannot rest on such tenuous ground, especially where, as here, it is urged in support of the seizure and forfeiture of property, the penalty prescribed by the statute. Cf. Kraus & Bros. v. United States, 327 U.S. 614, 620, et seq., 66 S.Ct. 705, 90 L.Ed. 894.

Section 372.9(a) of the Rules and Regulations, under which the Petitioner attempted to export the commodity here in question, permits "the exportation from the United States of shipments of commodities moving in transit through the United States for which *no formal or informal* consumption entry has been made at a

United States Customhouse, which originate in and are destined to any foreign country." The only prohibition therein contained is against the exportation of certain listed commodities, and "tin plate wasters" is not among them. It is not without significance that Section 373.5(b) permits even the exportation of domestic "tin plate wasters" under the conditions therein prescribed.

It is suggested by the Government, but not strenuously argued, that the commodity is subject to seizure and forfeiture under the express provisions of Section 1592 of Title 19 U.S.C., 19 U.S.C.A. § 1592, because of the alleged violation of this Section. We see no reason to decide the question thus raised. The present proceeding was undertaken pursuant to Sections 401, 402, and 403 of Title 22 U.S.C.A., which cover only exports. Section 1592 of Title 19 U.S.C.A., and the related sections, cover imports and prescribe appropriate remedies for seizure and forfeiture.

The petition for restoration is granted. The Petitioner will submit an appropriate order on notice to the United States Attorney.

### Appendix.

The right to seize and ultimately forfeit the commodity is derived from Section 401 of Title 22 U.S.C.A., supra, which reads as follows:

"Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war, or other articles, in violation of law, or whenever there shall be known or probable cause to believe that any such arms or munitions of war, or other articles, are being or are intended to be exported, or shipped from, or taken out of the United States, in violation of law, the several collectors, comptrollers of customs, * * * of the United States, and every other person duly authorized for the purpose by the President, may seize and detain any articles or munitions of war about to be exported or shipped from, or taken out of the United States, in violation of law, * * *, and retain possession thereof until released or disposed of as directed in sections 402–408 of this title. If upon due inquiry as provided in such sections the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States, the same shall be forfeited to the United States."